See also 7 Cir., 555 F.2d 172.

Louise BOND, Individually and on behalf of her minor children, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

Wayne A. STANTON, Individually and in his capacity as Administrator of the Indiana State Department of Public Welfare, et al., Defendants-Appellees, Cross-Appellants.

Nos. 79-1759, 79-1799 and 79-1800.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1980.

Decided Sept. 19, 1980.

Ivan E. Bodensteiner, Valparaiso, Ind., for plaintiffs–appellants, cross–appellees.

Ronald J. Semler, Indianapolis, Ind., for defendants–appellees, cross–appellants.

Before FAIRCHILD, Chief Circuit Judge, CUDAHY, Circuit Judge, and McGARR, District Judge.*

CUDAHY, Circuit Judge.

The instant appeal in this lengthy litigation concerns a prevailing plaintiff's entitlement to attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.

Plaintiffs, representing the class of persons under 21 years of age residing in Indiana who are eligible for Medicaid, originally brought this class action in 1973 pursuant to 42 U.S.C. § 1983, challenging the failure of various Indiana state officials to adopt and implement an early and periodic screening, diagnosis and treatment ("EPSDT") program for needy children as mandated by federal law, 42 U.S.C. § 1396 *et seq.* The district court granted summary judgment for plaintiffs and ordered defendants to submit a plan for implementation of an EPSDT program. 372 F.Supp. 872 (N.D. Ind.1974). This court affirmed, 504 F.2d

1246 (7th Cir. 1974) ("*Bond I*"), and the United States Supreme Court denied certiorari. 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975).

Subsequently, in an unpublished order, the district court assessed attorney's fees against defendants in their official capacities for time spent by plaintiffs in obtaining the summary judgment in the district court. The fee award was based, *inter alia*, on defendants' bad faith.[1] This court affirmed the award, agreeing that the district court's finding of bad faith was amply supported by the record, and holding that the award was not barred by the eleventh amendment. 528 F.2d 688 (7th Cir. 1976) ("*Bond II*"). The Supreme Court, however, vacated our judgment and remanded the case to us "for further consideration in light of Pub.L.No. 94–559, 90 Stat. 2641 (Oct. 19, 1976)." 429 U.S. 973, 97 S.Ct. 479, 50 L.Ed.2d 581 (1976). Pub.L.No.94–559 is the Civil Rights Attorney's Fees Awards Act (the "Fees Act" or the "Act"), which amended 42 U.S.C. § 1988. On remand, we again affirmed the award of attorney's fees, this time on the basis of the Fees Act. 555 F.2d 172 (7th Cir. 1977) ("*Bond III*").[2] Certiorari was denied by the Supreme Court on July 3, 1978. 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

On January 23, 1979, plaintiffs filed a motion in the district court seeking 1) supplemental fees for the work included in the original award, 2) fees for time spent in the trial court on the merits of the case subsequent to the entry of summary judgment and prior to the district court's decision approving the state's plan on August 6, 1976, 3) fees for hours spent on the appellate aspects of the merits of the case and 4) fees for time spent litigating entitlement to

---

* The Honorable Frank J. McGarr, District Judge for the Northern District of Illinois, is sitting by designation.

1. The award was also based on the private attorney general theory, which became inapplicable shortly after entry of the district court's order, by reason of the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

2. We also held that Congress was empowered to impose liability for attorney's fees on state officials in their official capacities under the Fees Act, notwithstanding the eleventh amendment, by virtue of its power to enforce the fourteenth amendment. That view was later upheld by the Supreme Court in *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

attorney's fees before the district court, this court and the Supreme Court. In an unpublished order dated June 6, 1979, the district court 1) declined to supplement the original fee award, 2) awarded fees for the time spent on the merits of the case between the issuance of summary judgment and approval of the state's plan, 3) denied fees for appellate work on the merits of the case and 4) denied fees for time spent litigating entitlement to fees.

Plaintiffs argue on this appeal that they are entitled to an award for their appellate work on the merits and for time spent litigating the fee question. They have not appealed from the district court's refusal to supplement the original award. On their cross–appeal, defendants contest the awarding of fees for time spent by plaintiffs' attorneys subsequent to the granting of summary judgment. We affirm this post–summary judgment award of the district court, and we hold that plaintiffs' attorneys are also entitled to compensation for their appellate work on the merits and for time expended in establishing their entitlement to fees.

The Civil Rights Attorney's Fees Awards Act declares that:

In any action or proceeding to enforce a provision of §§ 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

90 Stat. 2641, 42 U.S.C. § 1988. Although the Act on its face provides that the decision to award attorney's fees is a matter committed to the discretion of the court, we observed in *Dawson v. Pastrick*, 600 F.2d 70, 79 (7th Cir. 1979), that:

[T]he history of the provision makes it clear that the trial court's discretion is narrow: "It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful,

'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). S.Rep.No.94–1011, 94th Cong., 2d Sess. 4, *reprinted in* [1976] U.S. Code Cong. & Admin.News 5912."

Thus, "a prevailing plaintiff should receive fees [under the Act] almost as a matter of course." *Davis v. Murphy*, 587 F.2d 362, 364 (7th Cir. 1978); *Dawson*, 600 F.2d at 79. Plaintiffs' status as the prevailing party in this case has already been established in *Bond I.* 504 F.2d at 1251.

Turning first to the district court's fee award for the period subsequent to the entry of summary judgment and prior to approval of the state's plan, defendants argue that while plaintiffs incontestably prevailed in the district court's summary judgment order of March 22, 1974, they only "tilted at windmills" thereafter, accomplishing nothing of substantial benefit to the class which would entitle them to an award of fees. This argument, not raised below, is without merit. The record reveals that plaintiffs' diligent efforts to secure compliance with the district court's order were effectively catalytic to the state's eventual submission of an acceptable EPSDT plan. The precise plan approved by the district court on August 6, 1976, was not submitted by the state until July 16, 1976, over two years after the entry of summary judgment. During that period, plaintiffs obtained an order establishing a timetable and method for implementation, engaged in extensive discovery with respect to defendants' initially proposed plan and filed comments and objections concerning that plan which eventually resulted in defendants' submission of the revised plan, which the court approved. We agree with the district court that plaintiffs' efforts in this regard were "precisely the type of work for which Congress anticipated attorneys would be remunerated under 42 U.S.C. § 1988." Were we to conclude otherwise, plaintiffs' perseverance at the remedial stage of this litigation, as crucial to the obtaining of adequate

relief for the class as plaintiffs' success at the liability stage, would go uncompensated, in clear contravention of the policy of the Act that the prevailing party's attorneys be compensated for their time so as to encourage the bringing of meritorious suits of this nature.

Defendants also maintain that the district court erred in granting plaintiffs' request for fees incurred in securing compliance with the summary judgment because the fee request was not made within the 10-day period allowed for motions to alter or amend a judgment by Fed.R.Civ.P. 59(e). However, in contrast to the usual case where attorney's fees are not provided for by statute and are sought as part of the litigation itself, *e. g. Stacy v. Williams,* 446 F.2d 1366 (5th Cir. 1971), 42 U.S.C. § 1988 provides for the award of attorney's fees "as part of the costs." Thus, as the Fifth Circuit remarked in *Knighton v. Watkins,* 616 F.2d 795, 797 (5th Cir. 1980):

> [A] motion for attorney's fees [pursuant to 42 U.S.C. § 1988] is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks what is due because of the judgment. It is, therefore, not governed by the provisions of Rule 59(e). *Cf.* Fed. R.Civ.P. 58 ("[e]ntry of the judgment shall not be delayed for the taxing of costs").

Fed.R.Civ.P. 54(d), which · governs the awarding of costs, does not impose a time limit within which a motion for costs must be made. Thus, plaintiffs' fee request for time spent securing compliance with the summary judgment was properly entertained, and granted, by the district court.

Plaintiffs also sought attorney's fees in the district court for time spent successfully defending the district court's decision on the merits on appeal. While recognizing that it possessed the authority to grant fees for appellate work, the district court declined to do so, almost exclusively on the

basis of this court's order of June 3, 1975. That order denied the requested fees because, *inter alia,* the defendants were not found to have prosecuted their appeal in bad faith. The order was entered, however, *prior* to passage of the Fees Act.

■ The Fees Act indisputably applies to all cases pending on the date of its enactment. *Hutto v. Finney,* 437 U.S. 678, 694–95, n.23, 98 S.Ct. 2565, 2576, 57 L.Ed.2d 522 (1978). Indeed, as we remarked in *Bond III,* "[t]he legislative history . . . clearly indicates that Congress intended to cover not only pending cases generally but *this case in particular.*" 555 F.2d at 174 (emphasis supplied). We are accordingly bound to reconsider our earlier order in light of the new Act. *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *United States v. Elrod,* 627 F.2d 813 at 819 (7th Cir. 1980).[3]

■ That reconsideration need not detain us long. It is settled law in this circuit that the Fees Act entitles a prevailing plaintiff on appeal to compensation for appellate work. *Hampton v. Hanrahan,* 600 F.2d 600, 643 (7th Cir. 1979), *rev'd on other grounds,* —— U.S. ——, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Davis v. Murphy,* 587 F.2d 362, 364–65 (7th Cir. 1978). It is equally clear that defendants' good or bad faith is irrelevant under the Act. As the Supreme Court remarked in *Hutto,* 437 U.S. at 699, n.32, 98 S.Ct. at 2578 "[t]he Act authorizes an attorney's fee award even though [the losing defendant's] appeal was not taken in bad faith, no one denies that." *See also, Nadeau v. Helgemoe,* 581 F.2d 275, 280 (1st Cir. 1978); *Pickett v. Milam,* 579 F.2d 1118, 1121 (8th Cir. 1978); *Brown v. Culpepper,* 559 F.2d 274, 278 (5th Cir. 1977). Further, defendants have at no time disputed plaintiffs' status as the prevailing party on appeal. Thus, quite simply, since plaintiffs prevailed in the appeal of the merits of this case, the Act entitles them to fees for

---

**3.** *For similar reasons, an earlier order of this court dated February 19, 1976, which denied plaintiffs' request for attorney's fees for the first of their appeals on the question whether* time spent litigating entitlement to attorney's fees is compensable as part of a fee award, discussed *infra,* is also no longer controlling.

their appellate work. *Davis v. Murphy, supra.*[4]

■ The final issue before us on this appeal concerns plaintiffs' claim for attorney's fees incurred in litigating and establishing their entitlement to fees. Five circuits have already expressly addressed this question, and a prevailing plaintiff's entitlement to fees for the effort entailed in securing compensation has been unanimously upheld. *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978); *Weisenberger v. Huecker*, 593 F.2d 49, 53–54 (6th Cir.), *cert. denied*, 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *Gagne v. Maher*, 594 F.2d 336, 343–44 (2d Cir. 1979), *aff'd*, —— U.S. ——, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Johnson v. State of Mississippi*, 606 F.2d 635, 637–39 (5th Cir. 1979). Two other circuits, the District of Columbia and Ninth Circuits, have summarily ordered that a fee award include an amount in remuneration for time spent on the fee claim. *Moten v. Bricklayers, Masons & Plasterers International Union*, 543 F.2d 224, 240 (D.C.Cir. 1976); *Rosenfeld v. Southern Pacific Co.*, 519 F.2d 527, 530–31 (9th Cir. 1975). Indeed, in *Hairston v. R & R Apartments*, 510 F.2d 1090 (7th Cir. 1975), this court ordered, though without elaboration, that the district court determine a reasonable fee for services performed both in the district court *and on appeal*, where the sole issue on appeal was the plaintiff's entitlement to attorney's fees under the Fair Housing Act, a statute which is for present purposes indistinguishable from the Fees Act.

We now assert explicitly what *Hairston* implies: prevailing plaintiffs under the Act are properly entitled to fee awards for time spent litigating their claim to fees. As the First Circuit remarked in *Lund*, 587 F.2d at 77, "[i]t would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee." Similarly, the Sixth Circuit observed in *Weisenberger*, 593 F.2d at 53–54, that:

> When Congress passed the Act its basic purpose was to encourage the private prosecution of civil rights suits through the transfer of the costs of litigation to those who infringe upon basic civil rights. If a successful party in a civil rights suit is awarded attorney's fees under the Act and he cannot secure attorney's fees for legal services needed to defend the award on appeal, the underlying Congressional purpose for the Act would be frustrated.

Support for the view that "denying attorney's fees for time spent obtaining them would 'dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees,' *Stanford Daily v. Zurcher*, 353 F.Supp. 124 (N.D.Cal.1972), *aff'd*, 550 F.2d 464 (9th Cir. 1977), *rev'd on other grounds*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)," is also implied in the legislative history of the Fees Act. *See Gagne*, 594 F.2d at 344.

Defendants nevertheless insist, and the district court agreed, that plaintiffs should not be compensated for their attempts to secure compensation in this particular case because, in contesting plaintiffs' claim for fees, the state was legitimately arguing a close and substantial question of law, *i. e.* whether Congress was constitutionally empowered to enact the Fees Act insofar as the Act imposed liability for attorney's fees on state officials in their official capacities. *See* n.2, *supra*; *Bond III*, 555 F.2d at 174–75. Defendants' argument, however, is in

---

4. Defendants complain that plaintiffs should be barred from requesting this court to reconsider its June 3, 1975, order denying them fees because plaintiffs did not file a timely petition for rehearing pursuant to Fed.R.App.P. 40. That argument is frivolous. Even the most prescient of seers could not have been expected to forecast passage of the Fees Act (via a petition for rehearing) more than 16 months prior to its enactment.

More generally, defendants contend that plaintiffs' alleged dilatoriness in seeking all of the requested fees would render any possible fee award "manifestly unjust." We disagree. Plaintiffs appropriately awaited the Supreme Court's final denial of certiorari on the question of the constitutionality of the Fees Act under the eleventh amendment on July 3, 1978, and attempted to negotiate a settlement of fees with defendants before submitting their fee request to the district court on January 23, 1979.

reality no more than a thinly veiled attempt to smuggle an exemption for good faith, authoritatively excised from the Act by the Supreme Court in *Hutto v. Finney*, back into fee determinations made under the Act. *See Hutto*, 437 U.S. at 699, n.32, 98 S.Ct. at 2578.

In propounding the arguments it has set forth at various stages of this litigation, the state may well have been motivated by a legitimate desire to contest what it perceived to be a potential infringement of its constitutional immunity. But inherent in the policy of the Fees Act is a congressional judgment that encouragement of civil rights claims and actions through fee awards to prevailing plaintiffs and the consequent deterrence of civil rights violations presumably fostered by these actions are of greater weight than the hypothetical reluctance of defendants to pursue potentially meritorious objections (to fee awards) for fear of having to pay additional attorney's fees in the event their arguments prove unsuccessful. And again, as indicated, unless the efforts of successful plaintiffs to obtain fees are includable in a fee award, the award will be subject to potential dilution from the necessary engagement in extensive and uncompensated litigation to defend it, thus undermining the incentive system established in the Act.

Moreover, in many, if not most, of the suits to which the Fees Act is applicable, the defendants consist of either a state or state officials, as is true in the instant case. Any attorney's fees award which such defendants may be required to pay will be paid from the state treasury. Thus, the defendant's pocket in most of these actions is sufficiently deep that there is slight likelihood that meritorious objections to fee awards will not be pursued. But whatever the depth of the relevant pocket, the broad congressional policy of enforcing civil rights through private litigation mandates that prevailing plaintiffs be awarded counsel fees for time spent establishing their entitlement to fees.[5]

This cause is therefore remanded to the district court for entry of an appropriate award of attorney's fees to plaintiffs for their appellate work on the merits and for their efforts in litigating the fee question.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

5. Defendants have also argued in this appeal that plaintiffs are barred from recovering any attorney's fees under the Act because the underlying claim in the instant action, alleging that the state of Indiana violated the Social Security Act by failing to adopt an EPSDT program, fails to state a claim under 42 U.S.C. § 1983 (because no constitutional violation has been alleged). Since plaintiffs' complaint is assertedly not cognizable under Section 1983, defendants maintain that this is not an action or proceeding to enforce a provision of any of the statutes to which the Fees Act applies. *See* 42 U.S.C. § 1988.

The Supreme Court recently held, however, in *Maine v. Thiboutot*, - - U.S. --- , 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), that Section 1983 does encompass claims based solely on violations of federal statutes, and that the Fees Act authorizes the award of attorney's fees in such actions. Moreover, plaintiffs also initially asserted in their complaint an arguably substantial constitutional claim under the fourteenth amendment, which, although never decided, was arguably sufficient to independently bring the instant action within the ambit of Section 1983. *See Maher v. Gagne*, U.S. ---—, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).