### HAIRLINE CREATIONS, INC., Plaintiff-Appellee,

v.

### Diane KEFALAS, Defendant-Appellant.

#### No. 80–2594.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1981.

Decided Nov. 20, 1981.

Rehearing and Rehearing In Banc Denied Jan. 11, 1982.

Mark D. DeBofsky, Chicago, Ill., for plaintiff-appellee.

Richard Bushnell, Chicago, Ill., for defendant-appellant.

Before SPRECHER and BAUER, Circuit Judges, and DUMBAULD,* Senior District Judge.

SPRECHER, Circuit Judge.

The sole issue presented by this appeal is whether a postjudgment motion for attorneys' fees in a trademark case is a motion to alter or amend the judgment governed by Rule 59(e) of the Federal Rules of Civil Procedure, or is a motion for costs governed by Rule 54(d). For the reasons set out below, we hold that such a motion is governed by Rule 59(e) and that the motion below was untimely. Because the motion was untimely, the appeal also was untimely; therefore, this case is dismissed for want of jurisdiction.

* Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

1. Specifically, Hairline alleged violations of 15 U.S.C. §§ 1114, 1118 and 1125 (1980).

2. Ill.Rev.Stat. c. 140, § 22 (1980).

3. Hairline was issued its trademark in 1974 only after modifying its application in response to objections by the United States Patent Office

I

This trademark action was initiated in November, 1978, by Hairline Creations, Inc. (Hairline), who complained that Diane Kefalas, the owner of Hair Creations, had infringed its trademark in violation of federal trademark laws [1] and in violation of Illinois statutory [2] and common law. Hairline claimed that Kefalas' use of the name "Hair Creations" for her beauty salon generated confusion and constituted false designation of origin in relation to Hairline's trademark, which is used in association with the business of manufacturing and servicing custom hairpieces for men. Kefalas responded that the mark is a generic term which is merely descriptive and cannot acquire a secondary meaning, and that her business was not in competition with Hairline. Kefalas also counterclaimed for a declaratory judgment on the invalidity of Hairline's mark and for abuse of process. The latter claim alleged that Hairline's aggressive defense of its mark was in reality an illegal attempt to use the threat of expensive litigation to extend the reach of the mark beyond the limits granted in the registration.[3] Both Hairline and Kefalas requested attorneys' fees as part of the relief prayed for in their respective claims.

In March, 1979, Hairline moved to dismiss the abuse of process claim for failure to state a claim for relief. The district court denied that motion. In October, 1979, Kefalas moved for summary judgment against Hairline on all of Hairline's claims except for one of the state claims, and for summary judgment in her favor on her claim of the invalidity of the mark. In response, Hairline renewed its motion to dismiss the cause of process claim and, alternatively,

that the mark was solely descriptive. Hairline described the mark as relating to the custom service of "hair replacement for men designed specifically to the exact contour of a customer." Kefalas alleged that Hairline brought suit against several hairstylers with business names similar to Hairline's mark in an effort to strengthen the mark by extending its actual use beyond the narrow confines of the registration.

requested summary judgment in its favor on that claim.

The district court entered a memorandum order and judgment on August 29, 1980, which addressed these motions and constituted a final disposition of the case. The court granted summary judgment in favor of Kefalas on the federal infringement claims. The state infringement claims were then dismissed for want of continuing pendent jurisdiction, and Kefalas' counterclaim of invalidity was dismissed as moot. The court granted summary judgment in favor of Hairline on the abuse of process claim. Each party was directed to bear its own costs.

On September 26, 1980, twenty-eight days after judgment was entered, Kefalas filed [4] a motion for attorneys' fees, claiming that this was an exceptional case which merited fees under the federal trademark act, 15 U.S.C. § 1117 (1980). Kefalas stated that the record showed that the infringement claim was without merit, as evidenced by the court's judgment in her favor, and had been prosecuted only to harass and intimidate Kefalas into yielding to Hairline's demand that she change her business name.

Hairline opposed the motion as untimely under Rule 59(e). Hairline argued that the motion for attorneys' fees constituted an effort to amend the judgment and thus was governed by the strict, non-renewable time limit of Rule 59(e) requiring such a motion to be served within ten days from entry of judgment. Kefalas responded that the motion was one for costs under Rule 54(d), which imposes no time limit on such motions. The district court decided that the motion was a Rule 59(e) motion, and therefore was untimely. The court's judgment was entered October 29, 1980, and this appeal was filed November 5, 1980.

## II

The question of timeliness in this case turns on the characterization of the motion for attorneys' fees under § 1117. Kefalas argues that the motion is for "costs" and therefore falls under Rule 54(d).[5] Because Rule 54(d) imposes no time limit apart from an implicit requirement of reasonableness, Kefalas' motion for attorneys' fees would be timely. Hairline contends, and the district court agreed, that the motion requests alteration or amendment of the judgment, and therefore is governed by Rule 59(e).[6] That rule imposes a ten day, nonrenewable time limit for service of motions after entry of judgment. If Rule 59(e) applies, the motion for attorneys' fees clearly was untimely and properly was dismissed.

Rule 54(d) provides for the award of "costs" without defining that term. *See generally* 6 Moore's Federal Practice ¶ 54.70 (2d ed. 1976); 10 Wright & Miller, Federal Practice & Procedure § 2665 (1973). The rule implicitly embodies the American rule, whereby parties ordinarily cannot recover attorneys' fees as costs. *Alyeska Pipeline Services Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Thus "costs" are not equivalent to "expenses," but include only such items as court fees and witness fees.[7] 10 Wright &

---

**4.** Kefalas served the motion on Hairline's attorneys September 25, 1980. The difference in dates between service and filing is immaterial to the issue on this appeal.

**5.** Fed.R.Civ.P. 54(d) provides:

   (d) Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

**6.** Fed.R.Civ.P. 59(e) provides:

   (e) Motion To Alter Or Amend A Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

**7.** This is evidenced by 28 U.S.C. § 1920 (1981), which specifies what can be assessed as costs:
   A judge or clerk of any court of the United States may tax as costs the following:
   (1) Fees of the clerk and marshal;

Miller, Federal Practice & Procedure § 2666 (1973). Because of this limitation, the assessment of costs most often is merely a clerical matter that can be done by the court clerk. The taxing of costs will not delay entry of judgment. Fed.R.Civ.P. 58. In effect judgment and costs are interrelated but can be separately determined.

Rule 59(e) sets out a ten day limit for motions to alter or amend the judgment. *See generally* 6A Moore's Federal Practice ¶ 59.12 (2d ed. 1979); 11 Wright & Miller, Federal Practice & Procedure § 2817 (1973). Subdivision (e) was added to the rule, which otherwise deals with motions for new trials, in order to make it "clear that the district court possesses the power ... to alter or amend a judgment after its entry." Advisory Committee on Rules for Civil Procedure, *Report of Proposed Amendments to Rules of Civil Procedure for the District Courts of the United States*, 5 F.R.D. 436, 476 (1946). What constitutes "alteration or amendment" is not defined in the rule. Motions to vacate, to change a dismissal with prejudice to one without prejudice, and to include a trial court's conclusion of law have all been considered as falling under the rule. 6A Moore's Federal Practice ¶ 59.12[1] (2d ed. 1979). While a Rule 59(e) motion is pending, the judgment is suspended. Fed.R.App.P. 4(a). This effect on the finality of the judgment is limited, however, by the prohibition against extending the ten day limit. Fed.R.Civ.P. 6(b). After ten days, alteration or amendment of the judgment is permitted only as provided for by Rule 60, which allows correction of clerical errors anytime, Fed.R.Civ.P. 60(a), and permits substantive relief upon demonstration of extraordinary circumstances, Fed.R.Civ.P. 60(b).

Postjudgment motions for attorneys' fees have not been uniformly governed by one rule; rather, courts have accepted motions for attorneys' fees under both Rule 54(d) and Rule 59(e). *Compare Bond v. Stanton*, 630 F.2d 1231, 1234 (7th Cir. 1980) (Rule 54(d)) *with White v. New Hampshire Department of Employment Security*, 629 F.2d 697, 699 (1st Cir. 1980), *cert. granted* 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981) (Rule 59(e)). The simple explanation for this is that the rules of procedure fail to designate a single niche for attorneys' fees motions. The underlying reason, however, is the diversity of the exceptions to the American rule against the award of attorneys' fees. The exceptions have evolved out of widely varying rationales and include both common law and statutory exceptions. One cannot view attorneys' fees as a single, undifferentiated category. To decide what rule defines postjudgment motions for attorneys' fees requires examination of the nature of the exception under which the fees are claimed and the conditions under which fees are awarded. In this case a statutory exception, 15 U.S.C. § 1117, is the basis for the motion, and therefore must be the focus of the analysis.

### III

Section 1117 of Title 15[8] lists the remedies available for violation of the fed-

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1928 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

**8.** 15 U.S.C. § 1117 (1980) provides:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the

eral trademark statutes. The attorneys' fees provision was added by amendment in 1975, and simply states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." The provision is distinctive in the remedy scheme because it is discretionary and permits fees to be awarded to either party. The other remedies under § 1117 are available only to successful plaintiffs for protection of their trademarks.

The attorneys' fees provision in § 1117 was specifically designed to counter the effect of the Supreme Court's decision in *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). The Court held that, absent explicit statutory authorization, attorneys' fees may not be awarded in trademark cases. The Court noted that the American rule provides that attorneys' fees are not to be awarded as costs unless there is a contrary contractual or statutory provision or the case fits one of the narrow, judicially created, equitable exceptions. *Id.* at 717, 87 S.Ct. at 1406. In *Fleischmann* no contractual or *explicit* statutory provision existed to authorize attorneys' fees, and the Court specifically refused to adopt the position that the allowance of "costs" in the existing version of § 1117 could be read to include attorneys' fees in appropriate cases. *Id.* at 720, 87 S.Ct. at 1408. The Court also stated that the existence of a statutory scheme of remedies precluded an award of fees under the common law exceptions. *Id.* at 717, 87 S.Ct. at 1406. Finally, the Court found it persuasive that Congress had specifically provided for attorneys' fees in the related area of patent law, while several measures to similarly amend the trademark laws had failed. *Id.* at 720–21, 87 S.Ct. at 1408.

■ Congress added the explicit provision to the trademark laws by amending § 1117 in 1975. The amendment was perceived as adding a needed remedy for violations of the trademark laws:

Section 35 of the present Trademark Act provides

for awarding treble damages in appropriate circumstances in order to encourage the enforcement of trademark rights. The availability of treble damages, however, cannot be regarded as a substitute for the recovery of attorney fees. In suits brought primarily to obtain an injunction, attorney fees may be more important than treble damages. Frequently, in a flagrant infringement where the infringement action is brought promptly, the measurable damages are nominal. Section 35, as proposed to be amended, makes clear that a court has discretion as to whether to award treble damages, attorney fees, or both, or neither.

The bill would also permit prevailing defendants to recover attorney fees in exceptional cases. This would provide protection against unfounded suits brought by trademark owners for harassment and the like.

H.R.Rep.No.93–524, 93d Cong., 1st Sess., 5–6 (1973); *also cited in* S.Rep.No.93–1400, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News 7132, 7136. The added remedy was intended, however, to be "exceptional," thereby tracking the parallel provisions of the patent and copyright statutes. H.R.Rep.No. 93–524, 93d Cong., 1st Sess., 2 (1973); S.Rep.No.93–1400, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7132, 7133. "Exceptional" cases where an award of fees would be justified

---

same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recov-

ery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

were described as "cases where the *acts of infringement* can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Id.* (emphasis added).

■ The legislative history and statutory framework of § 1117 thus set forth two basic characteristics of the attorneys' fees provision. First, the award of attorneys' fees is to be predicated upon a finding that the substantive violations of the trademark statutes are "exceptional." The exercise of discretionary authority to award attorneys' fees is inextricably intertwined with the factual and legal issues that the trial court resolves at judgment. Second, the award of attorneys' fees is merely one of several potential remedies for trademark violations. This remedy would be awarded, as would other statutory remedies, at final judgment. A motion for attorneys' fees would, therefore, require the trial court to reexamine the basis of the judgment to determine if the "exceptional" requirement has been met so as to justify the remedy. This characterization of § 1117 leads inescapably to the conclusion that a postjudgment motion for attorneys' fees is a motion to alter or amend the judgment.

Trademark cases brought after amendment of the statute support this conclusion. *See Health Industries v. European Health Spas,* 489 F.Supp. 860, 869 (D.S.D.1980); *Jones Apparel Group, Inc. v. Steinman,* 466 F.Supp. 560, 564 (E.D.Pa.1979); *Salton, Inc. v. Cornwall Corp.,* 477 F.Supp. 975, 992 (D.N.J.1979); *Vuitton et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1078–79 (S.D. N.Y.1979), *aff'd,* 622 F.2d 577 (2d Cir. 1980). The issue of attorneys' fees in all of these cases was resolved at the time final judgment was rendered. Furthermore, the "exceptional" requirement in the statutory provision was uniformly read to require a specific finding in the judgment to justify an award or denial of fees. *See, e. g., Vuitton et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1078–79 (S.D.N.Y.1979), *aff'd,* 622 F.2d 577 (2d Cir. 1980).

Admittedly these trademark cases do not address the issue of the appropriate timing of a motion for attorneys' fees or the relationship of such fees to the substantive issues of the litigation. Their assumption that attorneys' fees are tied to the judgment is not surprising, however, because these trademark decisions draw on case law developed under the patent statutes, and in the patent area the courts have long considered attorneys' fees a question to be determined at final judgment.[9] *Laufenberg, Inc. v. Goldblatt Bros.,* 187 F.2d 823, 825 (7th Cir. 1951); *see also DuBuit v. Harwell Enterprises Inc.,* 540 F.2d 690, 693 (4th Cir. 1976); *Kaehni v. Diffraction Co.,* 342 F.Supp. 523, 533–35 (D.Md.1972), *aff'd mem.,* 473 F.2d 908 (4th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 151, 38 L.Ed.2d 103 (1973); *Davis Harvester Co. v. Long Manufacturing Co.,* 283 F.Supp. 536, 538 (E.D.N. C.1967); *Abbott v. Barrentine Manufactur-*

---

**9.** The current provision for attorneys' fees in the patent laws and the corresponding trademark provision are identically worded. 35 U.S.C. § 285 (1980). The patent provision differs only in that it appears as a separate statutory section in the portion of Title 35 that sets out remedies for patent violations. 35 U.S.C. §§ 281–293 (1980).

An earlier version of the patent attorneys' fees provision stated explicitly that fees were to be awarded "upon the entry of judgment" in any patent case. Act July 8, 1870, c. 230, § 55, 16 Stat. 206. The courts interpreted this provision to require extraordinary circumstances upon which to base an award of fees. *Laufenberg, Inc. v. Goldblatt Bros.,* 187 F.2d 823, 825 (7th Cir. 1951). The statute was amended to reflect this judicial interpretation when Congress authorized revision and codification of the patent statutes. S.Rep.No.1979, 82d Cong.,

2d Sess. (1952), *reprinted in* [1952] U.S.Code Cong. & Ad.News 2394, 2423. No comment was made concerning the deletion of the language specifying that fees be awarded at judgment. Courts that have considered the issue, however, have determined that the amendment made no substantive change in the statute. *Kaehni v. Diffraction Co.,* 342 F.Supp. 523, 533–35 (D.Md.1972), *aff'd mem.,* 473 F.2d 908 (4th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 151, 38 L.Ed.2d 103 (1973); *Darlington v. Studebaker-Packard Corp.,* 191 F.Supp. 438 (N.D.Ind.1961). One court has suggested that the language was deleted to avoid the result that attorneys' fees could *only* be awarded at judgment. The amended statute therefore permits necessary flexibility and insures harmony with post-judgment motions under Rule 59(e) or Rule 60(b). *Darlington v. Studebaker-Packard Corp.,* 191 F.Supp. 438, 440 (N.D.Ind.1961).

*ing Co.*, 255 F.Supp. 890, 901 (N.D.Miss. 1965); *Darlington v. Studebaker-Packard Corp.*, 191 F.Supp. 438 (N.D.Ind.1961); *Philadelphia Brief Case Co. v. Speciality Leather Products Co.*, 160 F.Supp. 153 (D.N.J. 1958). The rationale adopted in these cases is that the attorneys' fees question is inseparable from the substantive issues of the case.[10] Permitting a separate hearing on fees some time after final judgment is entered would open the door to relitigation of the entire patent case. *Laufenberg, Inc. v. Goldblatt Bros.*, 187 F.2d 823, 825 (7th Cir. 1951).

Similarly, whether a trademark case is "exceptional" cannot be separated from whether trademark rights have been violated or abused. This identity of issues weds the determination of attorneys' fees to the final judgment. It is because of this bond that a motion for fees after judgment is necessarily a Rule 59(e) motion to alter or amend the judgment.

The intertwining of issues is evident in this case. In order to establish that this was an "exceptional" case, Kefalas would have to convince the court that Hairline's defense of its trademark rights was "malicious, fraudulent, deliberate or willful." This Kefalas already had failed to do: the district court determined that the case was *not* exceptional. This conclusion is evident in the court's order that each side bear its own costs. If the court was unwilling to award costs to the prevailing party, it is unlikely the court would consider the case so "exceptional" that attorneys' fees would be awarded. Moreover, the court had rejected Kefalas' abuse of process claim, and Kefalas' brief indicates that essentially the same arguments were advanced as the basis for attorneys' fees. An award of attorneys' fees would have been inconsistent with dismissal of the abuse of process claim unless the judgment was amended. The determination of the attorneys' fees motion thus would have required reexamination of factual findings and legal conclusions in the judgment.

Rule 59(e) insures that such reconsideration will occur close in time to the judgment in order to prevent unnecessary relitigation. Precisely the opposite result would occur if we were to treat this motion for attorneys' fees as a Rule 54(d) motion. Lacking any time limit, Rule 54(d) would permit the filing of a motion for attorneys' fees weeks or even months after final judgment. Because the issue of whether a case is "exceptional" is not collateral, such a proceeding would inevitably tempt the parties to relitigate issues decided at trial. The effect would be to protract litigation and undermine the finality of the judgment.

## IV

Treating this motion for attorneys' fees as a Rule 54(d) motion also would ignore the particular function of attorneys' fees in trademark cases in favor of treating all statutory authorizations of attorneys' fees under a single rubric. This is the essence of Kefalas' argument that this appeal should be governed by our decisions in *Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980) and *Bond v. Stanton*, 630 F.2d 1231 (7th Cir. 1980). Those cases hold that the Civil Rights Attorneys Fees Award Act, 42 U.S.C. § 1988 (1980), constitutes an exception to the normal taxing of "costs," and therefore, a postjudgment motion for an award of attorneys' fees under § 1988 is governed by Rule 54(d).[11] It is clear, however, that those decisions rest on two considerations which emphasize the unique character of § 1988.

10. This same rationale has been followed in other cases involving statutory provisions for attorneys' fees, where Rule 59(e) was applied. *Hammond v. Public Fin. Corp.*, 568 F.2d 1362 (5th Cir. 1978) (Regulation Z, Truth in Lending Act); *Farmington Dowel Prod. Co. v. Forster Mfg. Co.*, 421 F.2d 61 (1st Cir. 1970) (antitrust); *Fase v. Seafarers Welfare & Pension Plan*, 79 F.R.D. 363 (E.D.N.Y.1978) (§ 502(g) of E.R.I. S.A. Act).

11. *Accord Knighton v. Watkins*, 616 F.2d 795 (5th Cir. 1980); *contra White v. N.H. Dept. of Employment Security*, 629 F.2d 697 (1st Cir. 1980), *cert. granted*, 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 839 (1981); *Hirschkop v. Snead*, 475 F.Supp. 59 (E.D.Va.1979), *aff'd on different grounds*, 646 F.2d 149 (4th Cir. 1981).

First, the explicit wording of § 1988 directs that attorneys' fees be awarded "as part of the costs." The statute, therefore, on its face designates the character of these fees. *Bond v. Stanton*, 630 F.2d at 1234. Second, § 1988 reflects a strong public policy of encouraging prosecution of civil rights actions by "private attorneys general." *Id.* Attorneys fees under § 1988 are in the nature of an equitable award in the public interest. Section 1988, therefore, is akin to the equitable common law exceptions to the American rule on costs, i. e., the common fund and bad faith exceptions. Those equitable exceptions have always been recognized as falling under Rule 54(d). *National Council of Community Mental Health Centers, Inc. v. Weinberger*, 387 F.Supp. 991 (D.D.C.1974) *rev'd on other grounds sub nom. National Council of Community Health Centers, Inc. v. Mathews*, 546 F.2d 1003 (D.C.Cir.1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977); *Lichtenstein v. Lichtenstein*, 55 F.R.D. 535 (E.D.Pa.1972), *rev'd on other grounds*, 481 F.2d 682 (3d Cir. 1973), *cert. denied*, 414 U.S. 1144, 84 S.Ct. 895, 39 L.Ed.2d 98 (1974); *Stacy v. Williams*, 50 F.R.D. 53 (N.D.Miss.1970) *aff'd*, 446 F.2d 1366 (5th Cir. 1971). As collateral proceedings focusing on the conduct of the litigation rather than on the issues resolved by the litigation, proceedings awarding attorneys' fees under the equitable exceptions do not threaten the finality of the substantive judgment. The equitable character of an award of attorneys' fees under § 1988 is not altered simply because the exception is in statutory form.

■ This court's decisions construing attorneys' fees under § 1988, therefore, do not herald a fundamental shift toward viewing all statutory provisions for attorneys' fees alike, nor do they indicate that § 1988 is unique. Rather, these decisions recognize that it is the *function* of attorneys' fees in the litigation process, not the form of the exception, that determines whether the award of fees is a remedy tied to substantive issues in the judgment, or is

a collateral matter that can be considered separate from the judgment. Once the characterization of the attorneys' fees is made, then it is a simple matter to determine when a postjudgment motion must be made. Where fees are tied to issues determined at judgment, Rule 59(e) applies; where fees are collateral, equitable matters, Rule 54(d) applies.

■ A statutory and functional analysis of the attorneys' fees provision of § 1117 indicates that these fees are tied to the judgment and are governed by Rule 59(e). The motion below was untimely, since it was made long after the ten day limit. Because the motion was untimely and properly dismissed by the district court, the operative period for appeal from final judgment commenced with the entry of judgment on August 29, 1980. *Hennessy v. Schmidt*, 583 F.2d 302, 306 (7th Cir. 1978). Notice of appeal was filed November 5, 1980, well beyond the thirty day limit. Fed. R.App.P. 4(a)(1). This appeal is, therefore, Dismissed for want of jurisdiction.

Dismissed.