*1334 O’MALLEY, Circuit Judge,
concurring in part and dissenting in part.
I agree with much of the majority’s thoughtful discussion of the scope of costs recoverable under 28 U.S.C. § 1920(4) and that the bulk of the costs awarded by the district court in this case are not recoverable thereunder. Clearly, the many and varied vendor services the majority categorizes as falling into “stage two” of its analysis cannot be characterized as “costs” under § 1920(4). Nor can the charges for the prior-art searches conducted on behalf of Return Path. I agree, accordingly, that the judgment deeming those items recoverable as “costs” must be reversed. I do not believe the majority is sufficiently mindful of the limits imposed on courts by § 1920(4), however. I, thus, respectfully dissent from the portion of the majority opinion that authorizes, as “costs,” an award of the pre-duplication expenses the majority describes as stage one costs.
While I appreciate the policy goals driving the majority’s desire to shift the costs incurred under stage one to the party requesting discovery, I believe the majority improperly expands § 1920(4) to achieve those goals. And, I do not believe the Eleventh Circuit would follow the path the majority forges, because doing so both creates an unnecessary circuit split and is inconsistent with the narrow approach the Eleventh Circuit has to date taken with respect to § 1920(4). There are many vehicles to assure proper and fair cost shifting relating to electronic discovery, § 1920(4) is simply not one of them.
I.
The majority correctly explains that, under Eleventh Circuit law, section 1920(4) “ ‘allows recovery only for the reasonable costs of actually duplicating documents, not for the cost of gathering those documents as a prelude to duplication.’ ” Op. 1326 (emphasis added) (quoting Allen v. U.S. Steel Corp., 665 F.2d 689, 697 n. 5 (5th Cir. Unit B 1982)). The majority also acknowledges that “only the costs of creating the produced duplicates are included, not a number of preparatory or ancillary costs commonly incurred leading up to, in conjunction with, or after duplication.” Op. 1328 (emphasis added). And, it explains that the Supreme Court’s most recent pronouncement on the scope of § 1920 included an admonition to read it narrowly. See Taniguchi v. Kan Pac. Saipan, Ltd., — U.S. -, 132 S.Ct. 1997, 2006, 182 L.Ed.2d 903 (2012) (“Our decision is in keeping with the narrow scope of taxable costs.”). Despite faithfully reciting these general principles, the majority then seems to ignore them when it finds that the costs incurred during the initial imaging of source media and the extraction of metadata are steps involved in the duplication process, and not those leading up to duplication.[1] I disagree and believe that these steps instead fall, in the words of the Eleventh Circuit’s own formulation, within the “prelude to duplication” and are not taxable costs. Both the Third and Fourth Circuits have reached the same conclusion. See Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 169 (3d Cir.2012), cert. denied, — U.S. -, 133 S.Ct. 233, 184 L.Ed.2d 43 (2012) (“Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable.”); Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 260 (4th Cir.2013) (finding the Third Circuit’s reasoning persuasive to not include imaging or metadata extraction costs). Particularly in light of the Su *1335 preme Court’s recent admonition in Tani-guchi, I believe the Eleventh Circuit would as well, avoiding a circuit split and a ruling that essentially taxes the costs of making two duplicates, not only the single “produced duplicate.”
Similar to the majority’s comparison of stage two to the paper-document analogue, I analogize stage one to the traditional process of getting ready to produce paper documents in discovery. Generally, a complex paper production requires a party to locate potentially relevant paper documents, gather and collect those documents from various locations (including often creating copies of these original documents), perform a centralized review of the gathered documents, determine which documents to produce, and ultimately, make copies of a smaller subset of relevant documents. The smaller subset is then produced to the other party. The expenses incurred in the activities that precede the step of making the final produced copies have not been considered taxable, however.
When comparing this process to an electronic document production, the initial imaging step is akin to “gathering and collecting” paper documents for production. While several steps are essential to the process, only making the final produced copies are covered under section 1920(4). As such, even if a party must process and extract metadata to make a production copy, those activities do not constitute “making copies” under section 1920(4). As noted above, other circuits agree.
The Third and Fourth Circuits have recently found that those expenditures incurred for the initial imaging step and extraction of metadata are not taxable as “costs” under § 1920(4). See Race Tires, 674 F.3d at 169 (“None of the steps that preceded the actual act of making copies in the pre-digital era would have been considered taxable.”); id. (“Hard drives may need to be imaged.... But that does not mean that the services leading up to the actual production constitute 'making copies.’ ”); Country Vintner, 718 F.3d at 260-61 (“We find the Third Circuit’s reasoning persuasive.... All of these considerations support the conclusion that, in this case, subsection (4) limits taxable costs to those identified by the district court: converting electronic files to non-editable formats, and burning the files onto discs.”). And, since the Third Circuit’s decision in Race Tires, the majority of district courts have agreed with the Third and Fourth Circuits. See, e.g., Phillips v. WellPoint Inc., No. 3:10-CV-00357-JPG, 2013 WL 2147560, at *6 (S.D.Ill. May 16, 2013); Amdocs (Israel) Ltd. v. Openet Telecom, Inc., No. 1:10CV910 LMB/TRJ, 2013 WL 1192947, at *8 (E.D.Va. Mar. 21, 2013); Eolas Techs. Inc. v. Adobe Sys., Inc., 891 F.Supp.2d 803, 806 (E.D.Tex.2012); Plantronics, Inc. v. Aliph, Inc., No. C 09-01714 WHA LB, 2012 WL 6761576 (N.D.Cal. Oct. 23, 2012); Cordance Corp. v. Amazon.com, Inc., 855 F.Supp.2d 244, 250 (D.Del.2012); see also Mann v. Heckler & Koch Def., Inc., No. 1:08CV611 JCC, 2011 WL 1599580, at *9 (E.D.Va. Apr. 28, 2011) (denying metadata extraction as taxable before Race Tires); Fast Memory Erase, LLC v. Spansion, Inc., No. 3-10-CV-0481-M-BD, 2010 WL 5093945, at *4-7 (N.D.Tex. Nov. 10, 2010), report and recommendation adopted, No. 3-10-CV0481-M-BD, 2010 WL 5093944 (N.D.Tex. Dee. 13, 2010) aff'd sub nom. Fast Memory Erase, LLC v. Intel Corp., 423 Fed.Appx. 991 (Fed.Cir.2011) (denying collecting and processing ESI costs before Race Tires). Like all of these other courts, I do not believe § 1920(4) covers the cost of the initial imaging step or the extraction of metadata as it is a part of the “prelude to duplication” of the produced copy.
*1336 Section 1920(4) also only covers the costs of creating a single copy produced to the other party. “[T]he prevailing party can recover, as costs for reproduction and exemplification under section 1920(4), the costs incurred in preparing a single copy of the original documents produced for the opposing party where that copy is supplied to the opposing party.” In re Ricoh Co., Ltd. Patent Litig., 661 F.3d 1361, 1367 (Fed.Cir.2011) (emphases added) (citation omitted).
The majority’s decision to include as costs a pro-rated portion of expenses incurred in initially imaging a source media compared to the subset produced, however, accounts for more than the costs of producing a single copy to another party. In reaching its conclusion that the costs of initial imaging are covered, the majority appears to confuse the costs for making a single copy produced to another party with those of making any copies of electronically produced documents in discovery, even those not produced. Without question, an electronic document that is first imaged, and then later produced, is copied twice: first, when the document is initially imaged as part of the original source media, and again, when another copy is made for production to the other party. The first copy, however, is often created for the producing party’s own efficiency and convenience by allowing the party to upload the documents to a central database to process and review before creating a subset “copy” to produce to the opposing party. Indeed, that is precisely what Cisco and Return Path did here. By adopting a rule that includes the costs of the initial imaging under section 1920(4), the majority effectively allows a party to tax the costs of making two copies, even though the initial imaged copy is not produced. But that is not what the statute authorizes.[2]
The majority rewrites § 1920(4) to address the increasing cost of electronic discovery. That is not our role, however. Harris v. Garner, 216 F.3d 970, 976 (11th Cir.2000) (“[T]he role of the judicial branch is to apply statutory language, not to rewrite it.”) (citations omitted); Korman v. HBC Fla., Inc., 182 F.3d 1291, 1296 (11th Cir.1999) (“It is not the business of courts to rewrite statutes.”). We are not authorized to stretch a statute to cover costs the Court believes should be covered in light of changes in technology; only Congress can rewrite § 1920(4).[3] See Race Tires, 674 F.3d at 170 (“Nor may the courts invoke equitable concerns ... to justify an award of costs for services that Congress has not made taxable.”).
Indeed, Congress drafted § 1920(4) narrowly so that the back-end assessment of costs would be no more than a clerical exercise. See Taniguchi, 132 S.Ct. at 2006 *1337 (“[T]he assessment of costs most often is merely a clerical matter that can be done by the court clerk.”) (quoting Hairline Creations, Inc. v. Kefalas, 664 F.2d 652, 656 (7th Cir.1981)). The Supreme Court has made clear that taxable costs are “modest in scope” and “limited to relatively minor, incidental expenses.” Id. They were meant to be so narrow and straightforward that the clerk of the court generally could handle their taxation, without resort to judicial officers. See 28 U.S.C. § 1920 (“A judge or clerk of any court of the United States may tax as costs (emphasis added); Taniguchi, 132 S.Ct. at 2006 (“the assessment of costs most often is merely a clerical matter that can be done by the court clerk.”) (quoting Hairline Creations, 664 F.2d at 656). Shirking this principle, the majority’s ruling creates a complicated taxation process that requires judicial officers or the clerk of the court to determine: (1) if the parties came to any agreement regarding electronic discovery production,[4] (2) if that agreement included the exchange of metadata, (3) whether that metadata could have been “preserved without initial imaging and extraction techniques,”[5] (4) what constitutes a pro-rated amount of the initial imaged source media, and (5) how to pro-rate the initial imaging expenses to the subset produced. Congress did not envision that complicated calculations would be involved in the determination of costs under § 1920(4). But the majority requires precisely that on remand, in contravention of Congressional intent.[6]
Not only is it beyond our authority to rewrite § 1920(4), it is not even necessary to address the concern the majority pinpoints — the propriety of shifting costs to the requesting party when a Court rule or agreement between the parties requires production in a particular electronic format. Op. 1329-30. Myriad options exist for a party to shift the costs of such discovery without upending Congressional intent. Indeed, Appellees had these options available, but failed to take advantage of them early in the litigation. For example, the Northern District of Georgia Local Rules as well as Rule 26 of the Federal Rules of Civil Procedure provide avenues for early discussions among the parties regarding the scope of relevant discovery and how to allocate cost sharing.
Northern District of Georgia Local Rule 16.2 requires parties to submit a Joint Preliminary Report and Discovery Plan. N.D. Ga. Civ. R. 16.2. Local Rule 16.2 requires the parties to, among other things, discuss limitations on electronic discovery, sources, define the scope of discovery, and strike agreements regarding the format of and production of electronic documents. Id. App. B. As such, the parties should have discussed cost-shifting and burdensome discovery at that time, and could have reached agreements to either limit discovery or shift certain costs relating thereto. As we have noted, agreements to allocate costs are permissible and enforceable. See In re Ricoh, 661 F.3d at 1366-67.
*1338 Rule 26 of the Federal Rules of Civil Procedure also provides numerous possibilities to limit or manage the costs of discovery. Rule 26(b)(2)(B) limits discovery on electronically stored information from sources not “reasonably accessible,” and provides the court discretion to order discovery and specify cost-shifting to obtain that discovery. Rule 26(b)(2)(C) also requires a court to limit the frequency or extent of discovery otherwise allowed if “the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties’ resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.” Finally, Rule 26(c) allows a party from whom discovery is sought to move for a protective order limiting discovery or specifying discovery under certain terms.
Despite the district court’s authority to limit discovery or shift costs in this case, virtually no discussion occurred in this case until later in discovery. Indeed, Cisco finally took advantage of some of these existing avenues for relief in a late request for fee shifting regarding a specific group of documents. In a June 11, 2008 Order, the district court found that Cisco had established that certain documents were not reasonably accessible because of undue burden or cost, and ordered Cisco “to produce those documents on the condition that [CBT] pay Cisco $300,000.00 as the cost of conducting a privilege review.” JA149-50. CBT then chose not to pursue discovery of those documents. While Cisco argues that only a small window for discovery existed, it could have turned to the above-mentioned options and to the court when CBT made their initial requests, which Cisco characterized as asking for “in effect, every document in the company.” Appellee Br. 3. Simply put, Cisco and Return Path could have and should have come to an agreement with CBT regarding the costs of discovery or asked for assistance from the court earlier. Having never sought to shift or avoid these costs sooner, they should not now be permitted to push a square peg into a round hole by attempting to squeeze their electronic discovery costs into section 1920(4), and the majority should not condone their effort to do so.
II.
Accordingly, I respectfully dissent from the majority’s conclusion to expand the narrow confines of costs taxable under Section 1920(4). In this case, only the costs of creating the final single copy produced to the requesting party are covered by § 1920(4), including scanning to the extent necessary, converting documents to a uniform production format, copying the converted files to production media, the creation and copying of load files, and the cost of the production media itself.

. I do not question that the cost of imaging source media would fall under section 1920(4) if it were directly imaged and provided to the opposing party as part of discovery.

. The majority equates the initial imaging and extraction of metadata with the process of scanning documents so that electronic copies can be made, which the Third and Fourth Circuits do categorize as recoverable costs. Scanning is a necessary incident to the making of a final digital duplicate and, thus, is "the modern-day equivalent of '... copies of papers.’ ” Race Tires, 674 F.3d at 167 (quoting Brown v. McGraw-Hill Cos., 526 F.Supp.2d 950, 959 (N.D.Iowa 2007)). The fact that scanning falls within the narrow confines of the "incidental expenses” authorized under § 1920(4) does not open the door to all activities that pre-date that exercise, however.

. In National Broiler Marketing Association v. United States, the Supreme Court quoted Justice Harlan's proposition that a statute "is not an empty vessel into which this Court is free to pour a vintage that we think better suits present-day tastes.” Nat’l Broiler Mktg. Ass’n v. U.S., 436 U.S. 816, 98 S.Ct. 2122, 56 L.Ed.2d 728 (1978) (quoting United States v. Sisson, 399 U.S. 267, 297, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970)). The Court then noted that "[c]onsiderations of this kind are for the Congress, not the courts.” Id.

. The parties concede there was no formal agreement in this case — either written or oral — to shift the costs of extracting metadata. Apparently, the majority would find a tacit agreement to shift such costs whenever a request for metadata occurs, and a producing party acquiesces to such a request.

. This process can include a highly intensive case-by-case scenario that requires a determination of the type of metadata requested and the type of electronically stored information gathered in discovery.

.The majority also does not provide clear guidance on remand for the district court to determine the extent to which costs are taxable when the producing party could have copied the requested documents directly from the source media, but chose to image source drives for its own efficiency.