**Charlene EVANS, Individually and on Behalf of a Class, Plaintiff–Appellant,**

**v.**

**CITY OF EVANSTON, et al., Defendants–Appellees.**

No. 90–3456.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1991.

Decided Aug. 14, 1991.

Rehearing and Rehearing En Banc Denied Oct. 24, 1991.

474

Elizabeth Dale, Kenneth N. Flaxman, Chicago, Ill., for plaintiff-appellant.

Jack M. Siegel, Siegel & Warnock, Chicago, Ill., for defendants-appellees.

Before COFFEY, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Charlene Evans brought suit to challenge the 1983 physical fitness test administered by the Evanston Fire Department, alleging that the test had a disparate impact on women in violation of Title VII. The district court agreed in part, holding that though the skills Evanston tested were reasonably related to those required by a firefighter, the passing score Evanston selected was arbitrary. *Evans v. City of Evanston*, 695 F.Supp. 922 (N.D.Ill. 1988). After Evans appealed the portion of the decision that was adverse to her, Evanston chose to cross-appeal the portion of the decision that went against it.

On appeal, Evans lost and Evanston won. *Evans v. City of Evanston*, 881 F.2d 382 (7th Cir.1989). In Evans' first direct appeal we agreed with the district court and Evanston that the test the City used was a reasonable predictor of fitness to be a firefighter. Our decision on Evanston's cross-appeal, however, was to remand the case to the district court to reexamine its decision with respect to the passing score in light of the Supreme Court's decision in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), which placed the burden of persuasion in the business-justification phase of a Title VII case on the plaintiff. *See id.* 109 S.Ct. at 2126. We agreed with the district court's choice of remedy for the disparate impact on women caused by the arbitrary scoring of the test, and wrote that if the result on remand was a second finding that the passing score Evanston adopted violated Title VII, the district court should again require the City to pay damages rather than ordering it to hire the women who would have passed a fairly scored test.

On remand, the district court revisited its earlier decision, and again concluded that the passing score Evanston selected was arbitrary and had a disparate impact on women in violation of Title VII. In accordance with our opinion, the district court rejected the adoption of a hiring remedy because of the preliminary screening role the physical fitness exam plays in the lengthy process of becoming a firefighter in Evanston. It opted instead to award damages, and ordered the City to pay the plaintiff class approximately $80,000.

Remaining before the district court, and now on appeal, was the question of attor-

ney's fees, which under Title VII a district court, "in its discretion ... may allow the prevailing party." 42 U.S.C. § 2000e–5(k). The two lawyers who made up Evans' legal team submitted a fee petition seeking compensation for 605 hours, 458 hours for senior counsel and 147 for junior counsel. Plaintiffs' counsel also sought an adjustment above the lodestar figure to reflect their contingent-fee representation of Evans, and later requested a share of the damages received by the class. The district court made a variety of downward adjustments which, taken together, reduced the number of hours for which fees would be awarded to 322½, 248½ for senior counsel and 74 for junior counsel. It also denied the requests for an adjustment above the lodestar figure and a share of the recovery. Plaintiffs' counsel appeal, challenging various aspects of the district court's decision reducing their fees or refusing to increase them. We affirm.

## I. FEES FOR THE FIRST APPEAL

■ The district court denied plaintiffs' counsel any fees for the time spent contesting the first appeal, observing that "[t]he plaintiff did not prevail on any issue on appeal. The defendant did prevail on the principal issue it raised." Memorandum Opinion and Order, Aug. 30, 1990 ("Mem. Op."), at 1, 1990 WL 129603. The effect of this decision was to disallow 86 hours billed by senior counsel and 42 billed by junior counsel. In this appeal, plaintiffs' counsel argue that the district court's disallowance of fees for the appeal was error. They assert that they were justified in pursuing an appeal from the district court's initial decision because that decision failed to afford plaintiffs the remedy they sought, jobs as firefighters in Evanston. They also argue that when they decided to appeal, Evanston cross-appealed, forcing the plaintiffs to defend even the limited victory they

had obtained in the trial court. Evanston responds that after the district court released its first opinion, the city council resolved not to appeal the decision. When, however, plaintiffs chose to appeal, the city chose to cross-appeal. Since Evans and her co-plaintiffs prevailed on no issue in the appeal or cross-appeal, the City argues, their counsel should receive no fees for the time they spent briefing and arguing the appeal.

As the Supreme Court wrote in *Hewitt v. Helms*, 482 U.S. 755, 759, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987), "[i]n order to be eligible for attorney's fees under [Title VII],[1] a litigant must be a 'prevailing party'.... Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *See also Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989); *Libby by Libby v. Illinois High School Ass'n*, 921 F.2d 96, 98 (7th Cir.1990). In this case, all the plaintiffs received on appeal was a reversal and remand on the one issue upon which they had achieved success in the district court. *See Evans v. City of Evanston*, 881 F.2d at 385 (remanding issue of test scoring to district court for reconsideration in light of *Wards Cove* ). "[T]he relevant inquiry" for determining whether fees should be awarded for an appeal "is simply whether the party seeking compensation substantially prevailed at the appellate level." *Kelley v. Metro. County Bd. of Educ.*, 773 F.2d 677, 682 (6th Cir.1985) (*en banc*), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). In this case, the result of that inquiry is decidedly adverse to plaintiffs' counsel.

Plaintiffs' counsel argue that the district court's resolution of the question of awarding fees for work done on the first appeal

**1.** *Hewitt v. Helms* was a case brought under 42 U.S.C. § 1983, and the fee shifting statute at issue in that case was 42 U.S.C. § 1988, not 42 U.S.C. § 2000e–5(k). However, "[i]t is well established that 42 U.S.C. § 1988 was patterned after § 2000e–5(k). Decisions under § 1988, with a few noteworthy exceptions not applicable to this case, govern decisions under § 2000e–

5(k)." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1175 n. 8 (6th Cir.1990); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); *Hanrahan v. Hampton*, 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980) (*per curiam* ).

ignores our decision in *Ustrak v. Fairman,* 851 F.2d 983 (7th Cir.1988). To the contrary, however, *Ustrak* compels us to conclude that the district court correctly declined to grant fees for the first appeal. We observed in *Ustrak* that "[a] civil rights plaintiff who, having won a judgment in the district court, appeals, seeking a greater victory—and fails utterly in his appeal, will be hard pressed to demonstrate an entitlement to his attorney's fees on appeal, even though he remains the prevailing party in the underlying litigation." 851 F.2d at 990. In this case, plaintiffs' counsel did win—in part—in the district court, did appeal, and did "fail utterly" on appeal. We agree with the district court that plaintiffs' counsel do not merit fees for their unsuccessful efforts in the first appeal.

## II. REDUCTION IN HOURS

 The next issue on appeal concerns the district court's 30 percent reduction in the hours claimed by plaintiffs' counsel. The trial judge arrived at this reduction through the use of a method he described as follows:

> It is my practice to conduct a close examination of two or three particular tasks performed by a counsel claiming fees and to apply the findings made there to the remaining hours claimed. Counsel are informed of this practice and counsel opposing the fee is permitted to suggest the specific work that ought to be scrutinized. This sampling procedure operates on the reasonable premise that a lawyer's billing and work habits and practices are, in fact, habits and practices, which will uniformly apply to all of the lawyer's work.

Mem. Op. at 1–2.

In this case, Evanston proposed that the district court scrutinize two aspects of the work plaintiffs' counsel performed, the preparation of a summary judgment motion and post-trial findings of fact. Plaintiffs' counsel claimed 78 hours for the summary judgment motion and 61 hours for the find-

ings of fact. The district court found that reasonable time estimates for these two tasks were 63 hours and 35 hours respectively. Adding the allowed time for the two tasks and dividing it by the claimed time for the two tasks, the district court arrived at the figure of 70 percent.[2] It applied this percentage to the hours senior and junior counsel claimed (after subtracting the time attributable to the first appeal), 372 hours for senior counsel and 105 hours for junior counsel. The district court ruled that 260 hours of senior counsel's requested time and 74 hours of junior counsel's requested time would be allowed. It then multiplied these figures by the billing rates it selected for junior and senior counsel to arrive at the lodestar figure.

On appeal, plaintiffs' counsel argue that the district court's across-the-board 30 percent reduction was an abuse of discretion. They contend that the time they spent on the two activities sampled by the district court was reasonable, and that the district court's methodology in calculating the across-the-board reduction goes beyond the broad discretion afforded district courts in deciding fee awards.

"For some few trial court determinations, the question of what is the standard of appellate review is answered by relatively explicit statutory command." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). This case presents one of them. Title VII's fee-shifting statute provides that the district court may allow the prevailing party fees "in its discretion." 42 U.S.C. § 2000e-5(k). Pursuant to this statutory command, we limit our review of a district court's decision to award attorney's fees to the question of whether the district court abused this discretion. *See, e.g., Eddleman v. Switchcraft,* 927 F.2d 316, 317–18 (7th Cir. 1991); *Jardien v. Winston Network,* 888 F.2d 1151, 1158 (7th Cir.1989); *Nanetti v. University of Illinois at Chicago,* 867 F.2d 990, 995 (7th Cir.1989). Fee calculation is an imprecise science, and the numbers ar-

---

**2.** 78 + 61 = 139; 63 + 35 = 98. 98/139 = .71. The district court apparently rounded down from .71 to .70.

rived at by a district court, figured to the last penny, may be seen by counsel and others to convey an "impression of exactness" that is illusory, even "delusive." *Ustrak*, 851 F.2d at 989; *see also Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir.1986) (*per curiam*) ("There is no one correct formula for determining a fee award, and therefore the district court's calculation is anything but an arithmetical exercise.").

Likewise the methodology used to calculate those figures, which represent no more than the learned guesses of district court judges, based on their extensive experience overseeing litigation and observing lawyers, as to how to go about determining what compensation an attorney deserves for her efforts in a given case. "There is no precise rule or formula for making these determinations," and a district court "necessarily has discretion" in choosing among the various alternative methods. *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). So long as the method selected is not arbitrary and is likely to arrive at a fair fee, it will not be disturbed on appeal.

We are unable to conclude that the sampling technique employed by the district court in this case falls below this standard. As the district court correctly observed, a lawyer's work habits, while not immutable, are likely to be consistent for the duration of a case litigated over the course of a few years. We note that it might be a better practice to allow both the party opposing the fee award *and* the party seeking fees to suggest the individual tasks to be sampled. In this case, however, the record shows that the district court allowed counsel for the plaintiff an opportunity to respond to the proposed reduction, albeit after it had already been suggested by the district court. Plaintiffs' counsel availed themselves of this opportunity, challenging the 30% reduction as "arbitrary and unreasonable," but not suggesting that the district court reconsider the reduction by including in its sample aspects of the work

they performed in the course of the litigation other than those proposed by the City.[3] Because the method employed by the district court was reasonable, and because plaintiffs' counsel were given ample warning of the method and a chance to respond when it was applied to them, we affirm the district court's 30 percent across-the-board reduction in the number of hours billed.

As to the specific findings made by the district court concerning the reasonable number of hours allowable for the summary judgment motion and findings of facts, we repeat what we wrote in *Ustrak*:

> "If ever there was a case for reviewing the determinations of a trial court under a highly deferential version of the 'abuse of discretion' standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court." 851 F.2d at 987.

The district court explained its conclusion as to each of the two pleadings, and took "into consideration that plaintiff here bore the burden of proof ... and that one who bears such a burden may well be required to work a significantly larger number of hours" than one who does not. Mem. Op. at 2. It also situated each of the two pleadings in the context of the litigation as a whole in examining the question of the amount of time they merited. This discussion satisfies the requirement that the district court " 'provide a concise but clear explanation of its reasons for the fee award.' " *Eddleman*, 927 F.2d at 316 (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941). Because the district court explained how it arrived at the number of hours it identified as reasonable for the two pleadings, and because the number it identified was within the range of reasonable estimates, we conclude that it was well within its discretion in fixing the allowable number of hours for the two pleadings it examined in calculating the reduction.

### III. FEE ENHANCEMENT FOR CONTINGENCY

■ In its fee petition, plaintiffs' counsel sought an enhancement above the lodestar

---

**3.** The district court was responsive to other arguments made in the motion to reconsider: though it reaffirmed the 30 percent reduction in the number of billable hours, it also increased the billing rate for senior counsel by twenty-five dollars per hour, to $200.

figure to reflect the risk they assumed in taking this case and expending their time and resources knowing that they would only be paid for their efforts if they succeeded. The district court rejected counsel's request for an enhancement above the lodestar figure because of the limited success plaintiffs enjoyed. On appeal, plaintiffs' counsel argue that in focusing on the degree of success plaintiffs achieved rather than on compensating them for the risk they assumed the district court applied an incorrect legal standard. Evanston responds that the district court correctly stated the applicable legal principle used to decide when an enhancement for contingency is appropriate, and that the limited success plaintiffs gained in this case does not warrant increasing the fees their attorneys receive.

We agree with the district court's view that the lodestar figure, the number of reasonably expended hours multiplied by an appropriate fee, is the "centerpiece of fee awards," *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989), and that contingency enhancements above the lodestar figure are appropriate only in "cases of exceptional success." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. *See also Blum v. Stenson,* 465 U.S. 886, 901, 104 S.Ct. 1541, 1550, 79 L.Ed.2d 891 (1984); *cf. Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 728, 107 S.Ct. 3078, 3088, 97 L.Ed.2d 585 (1987) (plurality opinion of White, J.) ("[P]ayment for the time and effort involved—the lodestar—is presumed to be the reasonable fee authorized by [42 U.S.C. § 1988], and enhancement for the risk of non-payment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts.").

As the district court concluded, this case was not one in which the plaintiffs enjoyed "exceptional success." Rather they lost on one of their two Title VII claims, their challenge to the validity of Evanston's physical fitness test as a predictor of the strength, agility, and speed needed to be a firefighter. Plaintiffs achieved success in their challenge to Evanston's system of scoring its test, but the district court denied them the relief they sought, employment as firefighters in Evanston, opting instead for the more limited remedy of damages. Given the incomplete victory plaintiffs obtained in the district court, we can safely say that the district court did not abuse its discretion in concluding that no enhancement in the fees awarded plaintiffs' counsel was appropriate.

## IV. SHARE IN THE RECOVERY

After the district court denied its motion for a fee enhancement to reflect contingency, plaintiffs' counsel filed a motion to reconsider in which they sought a quarter of the approximately $80,000 that the district court awarded the plaintiff class. The district court denied the request.

The request by plaintiffs' counsel for a share in the recovery obtained by their clients poses the question of whether a district court in a class action Title VII case may award fees from the common recovery derived from the defendants. The issue rests at the intersection between a common-law doctrine and a series of legislative enactments. Under the common-law doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing v. Van Gemert,* 444 U.S. 472, 479, 100 S.Ct. 745, 749–50, 62 L.Ed.2d 676 (1980). *See also Mills v. Electric Auto–Lite,* 396 U.S. 375, 393–395, 90 S.Ct. 616, 626–27, 24 L.Ed.2d 593 (1970) (explaining doctrine); *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939); *Skelton v. General Motors Corp.,* 860 F.2d 250, 252 (7th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). Under the latter, Congress has explicitly departed from the "American Rule" that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys fee from the loser," *Alyeska Pipeline Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612,

1616, 44 L.Ed.2d 141 (1975), by enacting fee-shifting statutes such as the one at issue in this case, 42 U.S.C. § 2000e–5(k), which provide that the prevailing party is entitled to have its costs, including a reasonable attorney's fee, paid by the loser.

Our cases have described the common fund doctrine and fee-shifting statutes as related exceptions to the American Rule, *see Hamilton v. Daley*, 777 F.2d 1207, 1211 (7th Cir.1985), but have also stressed the distinctions between them. *See Skelton*, 860 F.2d at 252–255. We have held that a common-fund recovery is allowable in class actions brought under the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301–2312, despite that Act's fee-shifting provision, 15 U.S.C. § 2310(d)(2). *See Skelton, supra*, 860 F.2d at 254–55. But we have also held that no common-fund recovery is allowable where the prevailing private plaintiff may obtain fees from the government pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. *Holbrook v. Pitt*, 748 F.2d 1168, 1174–75 (7th Cir.1984). Recent Supreme Court decisions suggest, but do not hold, that common fund recoveries should not be allowed in Title VII and civil rights cases, because, like limiting attorney's fees in these types of actions to the amount agreed upon between a plaintiff and her lawyer in a contingent-fee contract, allowing recoveries from a common-fund would place "an undesirable emphasis … on the importance of the recovery of damages." *Bergeron*, 489 U.S. at 95, 109 S.Ct. at 945. This focus on damages would contradict Congress's purpose in providing for fee-shifting in these cases, which was "to en-

courage successful civil rights litigation, not to create a special incentive to prove damages and shortchange efforts to seek effective injunctive and declaratory relief." *Id.* Indeed, since fees paid out of a common fund are only available in multi-plaintiff actions, the widespread use of common-fund recoveries as a source of fees for lawyers in Title VII or civil rights cases would not only skew the incentives of plaintiffs' lawyers toward damages rather than equitable remedies, but also toward class actions rather than suits by individuals.

Whatever the ultimate resolution of this issue, we decide that the district court was correct to rule that it was unnecessary to allow *both* a recovery from the defendants and the common fund in this case.[4] Numerous cases have applied the methodology used to calculate fees under fee-shifting statutes in the common-fund context. *See, e.g., Brown v. Phillips Petroleum*, 838 F.2d 451, 454–55 (10th Cir.1988), *cert. denied*, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *Bebchick v. Washington Metro. Area Transit Auth.*, 805 F.2d 396, 403 (D.C.Cir.1986); *Cohen v. West Haven Bd. of Police Comm'rs*, 638 F.2d 496, 505 & n. 15 (2d Cir.1980).[5] In this case, that methodology, properly applied by the district court, led it to the view that plaintiffs' counsel did not merit either an enhancement for contingency or a share of the common fund. In rejecting both these requests, the district court concluded that a reasonable attorney's fee in this case could be reached through the use of the lodestar method, without adjusting the lodestar figure upward either by assessing additional fees against the defendant in the form of

---

**4.** We note that resolution of this issue would be particularly inappropriate here, where the class plaintiffs who would be harmed were we to allow plaintiffs' counsel to share one-quarter of the damages they obtained in this suit are not parties to this appeal. Nominally, of course, they are, because of the legal fiction that in a fees case, the lawyer seeking fees is acting on her client's behalf. The situation in which a lawyer seeks fees not from a defendant but rather from her clients stretches this fiction to its limits.

**5.** The continued advisability of using the fee determination methodology employed in civil

rights (and by extension, Title VII) cases in common fund cases has been called into question by language in a footnote in the Supreme Court's opinion in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In *Blum* the court wrote that "[u]nlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonable expended on the litigation." *Id.* at 900 n. 16, 104 S.Ct. at 1550 n. 16; *see State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.1990) (discussing *Blum* footnote).

an enhancement for contingency or by awarding plaintiffs' counsel an additional benefit in the form of a share of the proceeds of the suit. We cannot say that this decision was an abuse of discretion or that the fee arrived at was unfair given the effort involved in this litigation and the limited success plaintiffs' counsel enjoyed.

## V. CONCLUSION

For the foregoing reasons, the decision of the district court is

AFFIRMED.