Sherry **EIRHART** and Equal Employment Opportunity Commission, Plaintiffs–Appellees,

v.

**LIBBEY–OWENS–FORD COMPANY** and LOF Glass Incorporated, Defendants–Appellants.

No. 91–3299.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1992.

Decided June 1, 1993.

Thomas R. Meites (argued), Lynn S. Frackman, Bonnie L. Beck–Fries, Paul W. Mollica, Meites, Frackman, Mulder & Burger, Chicago, IL, for Sherry Eirhart.

Margaret Herbert, John C. Hendrickson, E.E.O.C., Chicago, IL, John F. Suhre, William L. Robinson, Steven L. Brenneman,

E.E.O.C. Office of Gen. Counsel, Washington, DC, for E.E.O.C.

James P. DeNardo, McKenna, Storer, Rowe, White & Farrug, Robert S. Soderstrom (argued), James R. Murray, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Libbey–Owens–Ford Co. and LOF Glass Inc.

Before CUMMINGS and MANION, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

MANION, Circuit Judge.

In 1988 Libbey–Owens–Ford Company and LOF Glass, Inc. (collectively referred to as "Libbey") settled a class action suit by 1,412 women who were excluded from employment based on Libbey's minimum height and weight requirements. Pursuant to the settlement agreement, the district court entered a consent decree, which became effective on October 1, 1988. Since that time, the parties have had numerous disputes about interpretation of the decree and other post-decree matters. In this appeal, Libbey contests the district court's decision to award the class attorneys' fees incurred after the parties had reached a comprehensive settlement regarding attorneys' fees, and its decision to apply a multiplier to the attorneys' fee amount.[1] We affirm in part, reverse in part, and remand.

## I. Background

In August 1976 Sherry Eirhart filed a lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2000h–6, claiming that Libbey unfairly discriminated against women by observing minimum height and weight requirements in hiring. The Equal Employment Opportunity Commission filed a similar suit in May 1978, and the district court consolidated both suits in September 1978. On February 24, 1981, the district court certified a class of women who sought redress for Libbey's alleged discriminatory hiring practices. The district court named Sherry Eirhart as representative of the class. After protracted litigation, in September 1987 the parties entered into a settlement agreement and a proposed consent decree. The district court preliminarily approved the settlement agreement on October 2, 1987, and ordered entry of the consent decree, effective October 1, 1988. See Eirhart v. Libbey–Owens–Ford Co., 692 F.Supp. 871, 876 (N.D.Ill.1988).

The district court summarized the consent decree at 692 F.Supp. 877–78. For the purposes of this appeal, one provision of the decree is relevant. Libbey agreed to pay reasonable attorneys' fees "as the court shall direct or as [the parties] shall agree (subject to court approval)." The settlement agreement added "Nothing herein shall affect any parties' right to seek attorneys' fees in connection with any action seeking enforcement of or compliance with this agreement or the decree." The consent decree expressly incorporated the terms of the settlement agreement.

On December 23, 1987, the class filed an Interim Fee Petition seeking attorneys' fees which had accumulated between the start of litigation and October 2, 1987, the date the district court preliminarily approved the settlement agreement. Before the court ruled on the petition, the parties settled the attorneys' fee issue. Libbey memorialized this settlement in a letter agreement dated March 11, 1988, which class counsel signed on the same date. In one of the introductory paragraphs to the letter agreement, Libbey acknowledged that the class' Interim Fee Petition seeks "an award of reasonable attorneys' fees and the cost and expenses of prosecution of this matter through the date of the court's preliminary approval of the settlement on October 2, 1987." Libbey also acknowledged in an introductory paragraph the class' intent to later seek an award of attorneys' fees "incurred after October 2, 1987":

> During the course of our discussion on this subject you had maintained your position that at the conclusion of this matter (final judicial approval) the class would seek an award of fees, costs, and expenses incurred

1. This case was consolidated with appeal number 91–3603 for the purpose of briefing and oral argument. Because the issues presented in each appeal involve distinct facts and circumstances, we shall resolve appeal numbers 91–3299 and 91–3603 in separate opinions.

after October 2, 1987 as well as a multiplier or enhancement to the attorney fee award.

Numbered paragraphs 5 and 7 of the letter agreement, which Libbey principally relies upon in this appeal, are quoted in full below.

(5) Except as noted in paragraph (3) above, the sum of One Million Eight Hundred Fifty Thousand Dollars and in paragraph (4) the amount of One Dollar up to and including Fifty Thousand Dollars is in full and final satisfaction of any and all of [Libbey's] obligation for class attorneys' fees, costs, expenses and paralegal expenses.

\*     \*     \*     \*     \*     \*

(7) [Libbey], plaintiff Eirhart for the plaintiff class and class counsel acknowledge that it is not the intent of any of them to release any person or entity other than [Libbey] from any obligation they may now have or may have in the future to plaintiff Eirhart, the plaintiff class and class counsel for fees, costs and expenses.

The court approved this letter agreement.

As the case proceeded, the parties became involved in numerous disputes about the implementation of the consent decree, and the plaintiff class incurred significant attorneys' fees in resolving these disputes. On February 22, 1990, class counsel filed a motion regarding attorneys' fees, seeking attorneys' fees incurred since October 2, 1987. Libbey responded that it had no duty to pay these fees—that the clear and unambiguous language of the letter agreement operated to terminate Libbey's attorneys' fee obligation for all time. The class disagreed that the letter agreement released Libbey's obligation to ever pay attorneys' fees. The class pointed to the language of the settlement agreement, which it claimed imposed an obligation on Libbey to pay attorneys' fees "in connection with any action seeking enforcement of or compliance with the decree." The district court agreed with the class, ruling that the letter agreement did not terminate Libbey's obligation to pay attorneys' fees. The district court granted the class $30,975.87 in attorneys' fees, and applied a multiplier of two to that amount. *Eirhart v. Libbey-Ow-*

*ens–Ford Co.,* 774 F.Supp. 454 (N.D.Ill.1991). On September 4, 1991, the class filed a motion for attorneys' fees for services rendered between July 1, 1990 and July 31, 1991, a period not covered by the previous order. Consistent with its prior ruling, the district court granted that motion, awarding $88,-187.59 and again applying a multiplier of two to that amount. *Eirhart v. Libbey–Owens–Ford Co.,* No. 76 C 3182, 1991 WL 204969 (N.D.Ill. Oct. 2, 1991).

## II.  Analysis

### 1.  Duty to Pay Attorneys' Fees

On appeal, Libbey first challenges the district court's decision that the letter agreement did not release Libbey's obligation to pay future attorneys' fees. We review the district court's interpretation of the letter agreement as we would any contract, under a *de novo* standard. *Airlines Stewards & Stewardess Ass'n, Local 550, TWU, AFL–CIO v. American Airlines,* 763 F.2d 875, 878 (7th Cir.1985). Libbey contends that by virtue of the letter agreement, the plaintiff class released Libbey's obligation to pay attorneys' fees incurred after October 2, 1987. Under basic contract principles, however, if the plaintiff class wished to release Libbey's future obligation to pay attorneys' fees, the letter agreement should have contained some language expressly indicating as much. *See Beraha v. Baxter Healthcare Corp.,* 956 F.2d 1436, 1441 (7th Cir.1992) (in order to be enforced, the terms of a contract must be clear and definite). Instead, the letter agreement expressly recognized the plaintiff class' intent to seek attorneys' fees incurred after October 2, 1987. The provisions which Libbey relies upon do not amount to a release. Numbered paragraph 5 states that the amount Libbey agreed to pay in the letter agreement "is in full and final satisfaction of any and all of [Libbey's] obligation for class attorneys' fees, costs, expenses and paralegal expenses." That paragraph, like the entire letter agreement, refers only to then-existing obligations. It does not purport to resolve liability for future attorneys' fees. Libbey's position that the use of the term "future" in numbered paragraph 7 broadens this release to cover

future obligations is without merit. If the letter agreement was meant to release future attorneys' fees it should have included unequivocal language to that effect. Therefore the district court correctly determined that the letter agreement did not release Libbey's obligation to pay attorneys' fees incurred after October 2, 1987.

■ Next, Libbey contends that even if the letter agreement did not release its obligation to pay future attorneys' fees, it nevertheless had no obligation to pay such fees. The district court found that Libbey possessed an obligation to pay attorneys' fees arising from the language in the settlement agreement that "[n]othing herein shall affect any parties' right to seek attorneys' fees in connection with any action seeking enforcement of or compliance with this agreement or the decree." We disagree that this language creates an obligation to pay attorneys' fees; it simply purports not to limit any obligation which might independently exist. However, whether the district court properly found justification in the terms of the settlement agreement for its award of attorneys' fees is not material to our review. The district court needed no such justification; it possessed the discretion to award attorneys' fees under Title VII regardless of the language of the settlement agreement. By its terms, Title VII allows a district court to award attorneys' fees "in its discretion" to the prevailing party. 42 U.S.C. § 2000e–5(k). Any justification the district court chose to find in the "enforcement" and "compliance" language is redundant to its ability to award attorneys' fees under Title VII to the prevailing party.

Libbey does not dispute that the class was the "prevailing party" under the consent decree.[2] The class received the injunctive and monetary relief sought in its complaint, and the complaint was not frivolous. *See In re Burlington N. Inc. Employment Practices Litig.*, 832 F.2d 422, 425 (7th Cir.1987). Libbey argues that the district court nonetheless had no authority to award attorneys' fees for matters occurring after entry of the consent

decree. However, Title VII imposes no such limitation. The district court's discretion to award attorneys' fees to the class did not end with the first letter agreement settling attorneys' fees through October 2, 1987. The district court had continuing discretion to award the class attorneys' fees, at least for class counsel's successful efforts to implement the decree. *See Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 559–61, 106 S.Ct. 3088, 3095–96, 92 L.Ed.2d 439 (1986) (parties who obtain favorable consent judgment are entitled to fees for reasonable monitoring of the procedures set out in the decree); *Duran v. Carruthers*, 885 F.2d 1492, 1495 (10th Cir.1989) (the "consent decree [is] only the beginning, and counsel for the plaintiffs have a continuing duty and responsibility to make sure that defendants comply, and continue to comply, with the decree."); *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1305 (11th Cir.1988) ("[c]lass counsel are entitled to compensation until all benefits obtained by the litigation are in hand. Hence, hours reasonably expended on post-decree administration are compensable."). *Cf. Bond v. Stanton*, 630 F.2d 1231, 1233–34 (7th Cir. 1980) (prevailing class in civil rights case is entitled to attorneys' fees for post-summary judgment efforts to implement the judgment). Accordingly, "we limit our review of a district court's decision to award attorney's fees to the question of whether the district court abused its discretion." *Evans v. City of Evanston*, 941 F.2d 473, 476 (7th Cir.1991).

### 2. Fee Award Challenge

■ Libbey specifically challenges the district court's fee award for six categories of post-decree work. The first category involved a dispute between the parties as to whether the class members employed by Libbey under the terms of the consent decree would be covered under a new collective bargaining agreement between Libbey and its employees. The second category related to the manner of calculating withholding taxes under the decree, and the third category

---

**2.** The consent decree in fact expressly recognizes the district court's discretion to award attorneys' fees: "Defendants shall pay such reasonable attorneys' fees to Plaintiff Eirhart as the Court shall direct or as they shall agree (subject to Court approval)."

involved a dispute over whether a class member had shown "good cause" under the terms of the decree to delay the starting date of her employment with Libbey. The fourth category involved the class' motion to compel discovery concerning a matter relating to enforcement of the consent decree. The fifth and sixth categories concerned class counsel's motions for attorneys' fees. Because the district court concluded that the plaintiff class' right to attorneys' fees emanated from the "enforcement of or compliance with" language in the settlement agreement, the parties dedicate large portions of their briefs on appeal to whether these six categories fall within the confines of "enforcement" or "compliance."

We have held that the plaintiff class' right to attorneys' fees does not arise from the language of the settlement agreement; that the district court had discretion under Title VII to award such fees. Therefore, we do not review whether the district court was correct in concluding that the attorneys' fees awarded fall within the definition of "enforcement" or "compliance." Instead, we affirm the district court's decision to award attorneys' fees for the six disputed categories because each category represents a reasonable effort on the part of the class to monitor the decree. Additionally, as to the fifth and sixth categories, we have explicitly upheld an award of fees to prevailing parties for their time spent litigating their claim to fees. *Bond,* 630 F.2d at 1235.

■ Libbey next challenges the district court's calculation of the lodestar figures in its award of attorneys' fees.[3] However, Libbey's attack upon the lodestar figures is perfunctory, bordering on being insufficient for consideration by this court. In its brief, Libbey proclaims that the "district court should eliminate claimed [attorney] hours that are not reasonably expended or inadequately explained." Nowhere does Libbey list those hours which it contends were not reasonably expended or explained. It is not the obligation of this court to search the record and scrutinize figures used to calcu-

late attorneys' fees just because a party broadly attacks the veracity of the figures. *See Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 315 (7th Cir.1986) ("When a brief does not ... [state the facts necessary to support a legal claim], the court will not root about in the record in the hope that something will turn up.").

■ Libbey provides only three examples to support its argument. First, it points out that "[c]lass counsel sought reimbursement for 146.80 hours of attorney time allegedly expended in preparing and presenting their November 7, 1990 Fee Petition." Libbey never explains why this fact warrants reversal of the lodestar figure, and we will not invent a reason. Libbey's next statement in its brief is similarly perplexing: "[p]laintiffs' November 1990 Fee Petition originally sought reimbursement of 340.40 hours of attorney time expended on 10 separate, distinct fee petition items, but the district court ruled that only 5 items were compensable and allowed less than half of the claimed hours (157.75)." Yet Libbey appears to have prevailed on this point. The district court reduced the fees as Libbey requested. If Libbey is complaining that the reduction is insufficient, it does not say why. Finally, Libbey asserts that "attorney Frackman expended 106.40 hours of attorney time in connection with the Fee Petition, yet her time entries were hopelessly vague and provided no description of her services." The district court disagreed, stating that "[i]t is a little difficult to be patient with any lawyer's objection that challenges the sufficiency of another lawyer's billing entries such as 'preparation of fees and costs petition' and 'fee petition reply brief' and 'fee petition response'—entries that really do not call for a further breakdown in terms of particulars (if indeed any is possible)." We agree with the district court's conclusion and share its impatience with Libbey's attacks upon the lodestar calculations. We note our standard to review the calculation of attorneys' fees: "[s]o long as the method selected is not arbitrary and is likely to arrive at a fair fee, it

---

**3.** The district court calculated $30,975.87 and $88,187.59 as the lodestar figures, which represent "the product of reasonable hours times a

reasonable rate," *Delaware Valley Citizens' Council,* 478 U.S. at 565, 106 S.Ct. at 3098.

will not be disturbed on appeal." *Evans*, 941 F.2d at 477. Nothing raised by Libbey in this appeal calls into question the district court's lodestar calculations.

Finally, Libbey challenges the application of a multiplier to the lodestar figures. The Supreme Court recently addressed whether the enhancement of a lodestar figure to compensate for risk in a contingency fee case is appropriate under the fee-shifting provision of the Solid Waste Disposal Act, 42 U.S.C. § 6972(e), or Section 505(d) of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(d). *City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). The Court held that "enhancement for contingency is not permitted under the fee-shifting statutes at issue" and reversed the application of a multiplier. *Id.* —— U.S. at ——–——, 112 S.Ct. at 2643–44. The Court reasoned that because there was a strong presumption that the lodestar represents a reasonable fee, there is little reason to enhance it. *Id.* —— U.S. at ——–——, 112 S.Ct. at 2641–44. "Contingency enhancement is ... not consistent with our general rejection of the contingent fee model for fee awards, nor is it necessary to the determination of a reasonable fee." *Id.* —— U.S. at ——, 112 S.Ct. at 2643. A general application of such a multiplier would not be reasonable since it would only "increase a fee award but not ... reduce it." *Id.*

Although *Dague* did not involve Title VII, we conclude that its rule would apply to this case. Like the statutes in *Dague*, Title VII includes fee shifting provisions. And like in *Dague*, the district court in this case applied an enhancement to the lodestar figure to compensate the plaintiffs for the risks inherent in the contingency fee arrangement. At least one other Circuit has applied *Dague* to strike down a district court's application of a multiplier in a Title VII case. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir.1992). *Dague* requires that we reverse the application of a multiplier in this case. *Accord, Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993); *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir.1992). Therefore, we remand to the district court with instructions to award attorneys' fees in the lodestar amounts.

## III. Conclusion

The district court did not abuse its discretion in awarding attorneys' fees, but erred as a matter of law by adding a multiplier to the lodestar calculations. We remand with instructions to award attorneys' fees in the lodestar amounts.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.