Ivy J. MILLER, Plaintiff–Appellant,

v.

ARTISTIC CLEANERS, Defendant– Appellee.

No. 97–3396.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1998.

Decided Aug. 27, 1998.

Kevin Scionti, Monika Prekopa Talbot, Roberts & Bishop Indianapolis, IN, for Plaintiff–Appellant.

Calvin D. Hawkins, Gary, IN, for Defendant–Appellee.

Before FLAUM, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

There are two issues raised by Ivy Miller in this appeal. First, she claims that the district court erred in awarding her less in attorney's fees than she requested; second, she asserts that the court further erred by failing to provide for postjudgment interest in the attorney's fee award.* We affirm the district court's reduced award of attorney's fees.

Miller sued Artistic Cleaners for age discrimination, race discrimination, and retaliation. She also sued her union, Laundry and Cleaning Workers International Union Local No. 56, but the district court granted the union's motion for summary judgment. At trial, Miller withdrew her claim of age discrimination. The jury found that Artistic Cleaners did not engage in race discrimination against Miller, but it did find that Artistic Cleaners retaliated against her for filing an administrative charge of discrimination. The jury awarded Miller $1,250 in compensatory damages and $10,000 in punitive damages. After the jury verdict, Miller submitted an application for attorney's fees and costs. See 42 U.S.C. § 1988, 2000e–5(k). She then twice supplemented this application to include the time spent in postjudgment activities for a total request of attorney's fees of $44,259.10 and costs of $1,690.53.

On August 22, 1997, the district court issued an order awarding Miller $18,750 in attorney's fees and $1,690.53 in costs. See Miller v. Artistic Cleaners, No. 96–CV–24–RL, slip op. at 9 (N.D.Ind. Aug. 22, 1997). After evaluating twelve factors that Congress adopted in enacting § 1988 for determining whether the time spent and the hourly rate requested were reasonable (a.k.a. the Hensley factors), see S.Rep. No. 94–1011, 94th Cong. 2nd Sess. at 6 (1976), U.S.Code Cong. & Admin.News 1976 pp. 5908, 5913; Hensley

v. Eckerhart, 461 U.S. 424, 429 n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the district court refused to award the amount Miller requested. See Miller, slip op. at 4. It found the request unreasonable in light of the limited success obtained, the skill level required for this "simple employment discrimination case," and the poor work product presented to the court. Id. at 4. The district court concluded that the presentation and work product reflected 150 hours of work at a skill level performed by an attorney that charged $125 per hour. See id. at 6. Miller appeals.

■ Before we can address her arguments, we must confirm that we have jurisdiction to hear this appeal. Aside from certain interlocutory rulings not applicable here, we have jurisdiction only over final decisions of the district court. See 28 U.S.C. §§ 1291, 1292. We are concerned that no judgment entry was made on the order granting an award of attorney's fees as required by Fed. R.Civ.P. 54(d). See Fed.R.Civ.P. 54(d)(2)(C) (requiring that a judgment for an award of attorney's fees "be set forth in a separate document as provided in Rule 58"); Fed. R.Civ.P. 58 (requiring in general, that when a district court grants relief, a judgment set forth on a separate document shall be entered on the court's docket). The question for us is whether, in the absence of a judgment entry, the award of attorney's fees in this case was a final and appealable order affording us jurisdiction.

■ We have previously allowed that, with regard to appellate jurisdiction, a judgment entry on a separate document "is not a prerequisite to finality; it is merely evidence that the district court is done with the case, making its decision final and therefore appealable under 28 U.S.C. § 1291." Richmond v. Chater, 94 F.3d 263, 266 (7th Cir. 1996); see also Bankers Trust Co. v. Mallis, 435 U.S. 381, 384–85, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam); Otis v. City of Chicago, 29 F.3d 1159, 1165 (7th Cir.1994) (en banc). If the district court clearly intended the order from which an appeal is taken to be a final decision, and if the appellee would not be misled or prejudiced as a

---

* Addressed in a separate order is the petition by Artistic Cleaners requesting sanctions against

Miller and her counsel for filing a frivolous appeal.

result, the appellant may waive entry of a separate judgment. *See Mallis*, 435 U.S. at 387, 98 S.Ct. 1117; *Armstrong v. Ahitow*, 36 F.3d 574, 575 (7th Cir.1994). Since neither party has argued that the district court did not intend the order to be final and Artistic Cleaners has not argued that it has been misled, we see no reason to dismiss this appeal. *See Mallis*, 435 U.S. at 385, 98 S.Ct. 1117 (viewing dismissal for failure to satisfy separate document requirement as forcing wheels to spin for no practical purpose). We conclude, therefore, that we have jurisdiction over this appeal—but more about the lack of a judgment entry later in our discussion of postjudgment interest.

■ Miller contends that the district court abused its discretion in calculating her award of attorney's fees by reducing the hourly rate and total award and by not awarding fees for work performed after the judgment. We affirm a district court's award of attorney's fees unless the award constitutes an abuse of discretion. *See LeBlang Motors Ltd. v. Subaru of America, Inc.*, 148 F.3d 680, 686–87 (7th Cir.1998); *Dutchak v. Central States, Southeast and Southwest Areas Pension Fund*, 932 F.2d 591, 596 (7th Cir.1991). We owe a high degree of deference to the court's determination for three reasons: First, the district court has a " 'superior understanding of the litigation and [we] desir[e to] avoid[ ] frequent appellate review of what are essentially factual matters.' " *Estate of Borst v. O'Brien*, 979 F.2d 511, 514 (7th Cir.1992) (*quoting Hensley*, 461 U.S. at 437, 103 S.Ct. 1933). Second, the need to achieve uniformity in attorney's fees awards is not so compelling as to justify a high level of scrutiny. *See id.* Finally, deference assists us in avoiding satellite litigation solely on fees. *See id.*

■ Miller believes that the district court erred in reducing her attorneys' hourly rate and total award because her counsel's fee application was supported by unopposed affidavits from experienced counsel in the civil rights area. These affidavits establish that Miller's lead attorney, Kenneth T. Roberts, was a respected member of the bar in Indiana who has practiced for twenty-four years and that the customary hourly rate for employment discrimination cases for counsel with a reasonably comparable level of skill, reputation, and experience ranged from $250 to $350 per hour. Thus, she contends that the district court abused its discretion by failing to consider the experience, reputation, and ability of the attorney and by not considering fee awards in similar cases.

■ We cannot accept Miller's argument on this point. Contrary to her suggestion that the district court did not incorporate certain factors, it is evident from even a brief perusal of the court's order that the court knew the *Hensley* factors, applied them, and highlighted those factors which persuaded the court to lower the requested rate and amount from the initial lodestar calculation. The district court followed the approach recommended by this Court and the Supreme Court. *See Hensley*, 461 U.S. at 433–34, 103 S.Ct. 1933; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir.1996). We do not understand why Miller believes that affidavits from local counsel about an attorney's reputation and rates for similar cases should override the district court's firsthand observations of that same attorney's performance and work product. *See People Who Care*, 90 F.3d at 1310–11 (stressing that courts should incorporate the *Hensley* factors once the lodestar amount is determined). While an attorney may command $250 per hour in some matters, he or she is not guaranteed to receive that rate when the performance, work product, and result do not suggest to the district court that the attorney put forth the effort necessary to receive $250 per hour from a paying client. Based on the district court's assessment of Miller's attorneys' performance, it did not abuse its discretion in reducing their hourly rates and total award.

■ Miller also suggests that the district court erred in not awarding fees for her counsel's postjudgment work. Though time spent litigating attorney's fees is compensable, *see Eirhart v. Libbey–Owens–Ford Co.*, 996 F.2d 846, 851 (7th Cir.1993), we do not agree with Miller's contention that the district court ignored her counsel's request for time spent litigating their fees. Miller believes the court ignored this amount because the district court did not split the award into prejudgment and postjudgment segments, but we see no reason why a district court

errs by not itemizing an award of attorney's fees absent a specific request by a party to do so. In its order, the district court stated that three applications for fees were before it: Miller's application filed on April 16, 1997, her first supplemental application filed on June 16, 1997, and her second supplemental application filed on August 18, 1997. The district court confirmed this fact when it stated that Miller's counsel requested compensation for 357.16 hours of work. The court arrived at that figure by adding the hours spent after the judgment to the initial fee application amount. These statements in the order unquestionably establish that the court considered all of the hours that Miller's counsel worked when it reduced the fee amount requested. It therefore did not forget to consider counsel's postjudgment work.

■ Finally, Miller inexplicably claims that the district court erred by not including postjudgment interest in its award of attorney's fees. Of course, regardless of whether there is any reference to postjudgment interest in the pleadings, a court's order, or the entry of a money judgment, a prevailing plaintiff in federal court is automatically entitled to postjudgment interest. *See* 28 U.S.C. § 1961(a); *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1104 (7th Cir.1990); see also 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2664, at 186–87 (3d ed.1998). It is simply unnecessary for the court to refer to statutorily provided interest. Thus, the district court did not err in making no mention of postjudgment interest in its order awarding attorney's fees. Moreover, such statutory interest is calculated from the date of entry of the judgment and not the date of the order. *See* 28 U.S.C. § 1961(a). Rule 58 is unequivocal in its language. *See* Fed. R.Civ.P. 58 (providing that a judgment is effective only when set forth in a separate document and properly entered). In this case, Artistic Cleaners could not owe postjudgment interest because it paid the attorney's fees awarded by the district court within seven days of the issuance of the order— even though no judgment was entered as required by Fed.R.Civ.P. 54(d)(2)(C) and 58.

For all of the above reasons, we Affirm the decision of the district court.